IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2015 APR 13 AM 9: 25
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| In the Matter of the Detention of<br>JASON CARL MORRIS. | ) ) ) | No. 71031-1-I |
| STATE OF WASHINGTON, | ) ) | DIVISION ONE |
| Respondent, | ) ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| JASON CARL MORRIS, | ) ) | |
| Appellant. | ) | FILED: April 13, 2015 |

SCHINDLER, J. — Jason Carl Morris appeals a 14-day involuntary commitment order. He argues insufficient evidence supports the conclusion that he was "gravely disabled" under RCW 71.05.020(17)(a). We disagree, and affirm.

FACTS

On September 25, 2013, Morris went to the emergency room at Harborview Medical Center in a "severely decompensated" psychiatric state. Morris was unable to communicate his needs to hospital staff and said "he was having suicidal thoughts." Hospital staff contacted his mental health case manager at the Downtown Emergency Service Center (DESC), Rachel Long. After meeting with Morris, Long asked mental health professional Linda Dunn to conduct an evaluation of him.

Dunn determined that "as a result of a mental disorder," Morris was "gravely disabled" and presented "a likelihood of serious harm" to himself or others. Dunn filed a petition to detain him for "a 72-hour evaluation and treatment period." The petition states Morris has a diagnosis of paranoid schizophrenia and "a substantial history of threatening behaviors in the community when not stabilized." The petition also states Morris is "chronically homeless" and has "a history of incarcerations and very poor outpatient follow up with providers." According to the petition, Morris had visited the emergency room 37 times "this past year alone" and frequently "self-presented with various delusional beliefs, somatic complaints deemed delusional in content, speaking in incoherent sentences, and unable to communicate his needs effectively." The petition also asserts that when Morris went to an emergency room on September 19 complaining he had been "gassed," the doctors noted that "he had lost approximately 20 pounds in a two and a half month period, and he presented quite thin and gaunt."

Long submitted a declaration in support of the petition. Long stated that in July 2013, DESC assigned her to Morris as an "intensive case manager due to his frequent crises and outreach needed." Long said the DESC homeless shelter recently banned Morris "because they have serious concerns about his ability to be safe in the shelter." Long testified that Morris "refuses medications" and "is so distracted by what appears to be visual and auditory hallucinations he cannot focus on a conversation or activity."

On September 26, Morris was admitted to the inpatient treatment facility at Navos Mental Health Solutions. On September 27, Navos clinical psychologist Dr. Rachel Eisenhauer filed a petition in King County Superior Court requesting a hearing to determine whether Morris "shall be detained for fourteen days [for] involuntary

2

treatment." The petition states Morris "is suffering from a mental disorder" and involuntary treatment is in his best interest because he "needs the safety and structure of an inpatient setting." The petition alleges Morris is "gravely disabled" and that he presents "a likelihood of serious harm" to himself and others. The petition states, in pertinent part:

> Prior to admission, [Morris] was deteriorating in his mental status. . . . He has been found to be unable to communicate his needs and also to report suicidal ideation. His case manager expressed concern that he is too decompensated to be able to care for himself. In his current state, he is gravely disabled as well as a danger to others and to himself.

The court held a probable cause hearing on September 30.[1] At the beginning of the hearing, the State "dismiss[ed] the allegation of harm to others" and "proceed[ed] only on harm to self and grave disability." Long and Dr. Eisenhauer testified in support of the petition for a 14-day involuntary commitment.

Long testified she has known Morris since 2008 when she began working at DESC as a shelter counselor. Long said Morris has been homeless for the past two years "except for one brief period of time, for less than six months." Long testified that Morris stayed primarily at the DESC shelter and that "prior to a few months ago," Morris was "coming in almost daily to the drop-in [hygiene] center at the DESC." Long said she saw Morris "five or six times" in the past "several" months and noticed his mental condition had deteriorated. Long testified Morris was more "disorganized, speak[ing] in a word salad[2]," and "frequently almost exclusively responding to internal stimuli." Long testified Morris "talks to himself constantly" and "makes really bizarre gestures as if he

---

[1] RCW 71.05.240(1) states, in pertinent part, "If a petition is filed for fourteen day involuntary treatment . . . , the court shall hold a probable cause hearing within seventy-two hours of the initial detention of such person."

[2] Dr. Eisenhauer described "word salad" as "disorganized, confused, nonsensical in . . . speech."

sees something in front of him." Long said Morris had "gotten thinner" and she recently saw "his spine poking through his shirt."

Long testified that on September 17, DESC banned Morris from staying at the shelter "after he menaced and threatened to kill a staff person." According to Long, when she evaluated Morris at Harborview on September 25, he was "more despondent than I've seen him." Long said Morris told her "he was having suicidal thoughts over cigarettes." Long testified that suicidal thoughts are "something new for him." Long also testified that Morris had no plan for where to go when he left the emergency room and was uncooperative "as far as coming up with another plan for his living arrangements."

Dr. Eisenhauer diagnosed Morris with "schizoaffective disorder." Dr. Eisenhauer testified that in her opinion, as a result of his mental disorder, Morris was "in danger of serious physical harm from a failure or inability to provide for his essential needs of health and safety."

The court concluded there was insufficient evidence to establish grave disability based on "severe deterioration in routine functioning" under RCW 71.05.020(17)(b). The court concluded the "[v]ague allegations of feeling suicidal because he can't get cigarettes" were insufficient to establish that Morris presented "a likelihood of serious harm" to himself under RCW 71.05.020(25).

However, the court concluded the testimony of Long and Dr. Eisenhauer supported finding that Morris was "gravely disabled" because he was in "danger of serious physical harm to himself resulting from his inability to provide for his essential health and safety needs" under RCW 71.05.020(17)(a).

4

The court found Morris "is currently suffering from a mental disorder, specifically schizoaffective disorder." The court found that Morris "has lost a significant amount of weight" and that he frequently visits hospital emergency rooms "because he does not apparently have the ability to find any other place to go to find shelter." The court found Morris "is not able to feed himself and not able to find safe and appropriate housing despite assistance from Ms. Long to do so."

The court entered an order granting the petition to detain Morris "for a period not to exceed 14 days" for inpatient mental health treatment at Navos.

On October 10, Morris filed a notice of appeal of the order granting the petition for a 14-day involuntary commitment order.[3]

## ANALYSIS

Morris contends insufficient evidence supports the conclusion that he was "gravely disabled" under RCW 71.05.020(17)(a). Morris argues the State did not establish he was "in danger of serious physical harm" as a result of his mental disorder.

Washington's civil commitment statutes authorize the State to detain an individual "for evaluation and treatment" after establishing that he or she is "gravely disabled" or presents "a likelihood of serious harm" to self or others. RCW 71.05.150(1), .240(3).

RCW 71.05.020(17) states that an individual is "gravely disabled" when, as a result of a mental disorder, the individual

> (a) [i]s in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or

---

[3] On October 15, Morris entered into an agreed order for up to 90 days of alternative involuntary mental health treatment.

her actions and is not receiving such care as is essential for his or her health or safety.

Under RCW 71.05.020(25), an individual presents a "likelihood of serious harm" to self or others when there is

> (a) [a] substantial risk that: (i) Physical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself; (ii) physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm; or (iii) physical harm will be inflicted by a person upon the property of others, as evidenced by behavior which has caused substantial loss or damage to the property of others; or
> (b) [t]he person has threated the physical safety of another and has a history of one or more violent acts.

The standard of proof at a 14-day commitment hearing is a preponderance of the evidence. RCW 71.05.240(3)[4]; In re Det. of LaBelle, 107 Wn.2d 196, 214, 728 P.2d 138 (1986). To meet its burden of establishing an individual is "gravely disabled" under RCW 71.05.020(17)(a), the State must present "recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment." LaBelle, 107 Wn.2d at 204-05. The State must also show the failure or inability to provide for essential needs presents "a high probability of serious physical harm within the near future unless adequate treatment is afforded." LaBelle, 107 Wn.2d at 204-05.

---

[4] RCW 71.05.240(3) states, in pertinent part:

At the conclusion of the probable cause hearing, if the court finds by a preponderance of the evidence that such person, as the result of mental disorder, presents a likelihood of serious harm, or is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed fourteen days in a facility certified to provide treatment.

We review the trial court's decision in an involuntary commitment proceeding to determine whether substantial evidence supports the findings of fact and whether those findings in turn support the court's conclusions of law. LaBelle, 107 Wn.2d at 209. Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998).

Morris contends the court erred in relying on his recent weight loss as evidence of risk of serious physical harm as a result of his mental disorder. The record shows the court relied on more than weight loss in determining Morris was gravely disabled under RCW 71.05.240(17)(a). Substantial evidence supports the court's finding that Morris was suffering from schizoaffective disorder and that the disorder was having an adverse effect on his cognitive and volitional functioning. Long testified that Morris's deteriorating mental condition caused behavioral problems that "continue to escalate in frequency and seriousness," that he more frequently went to the hospital emergency room, and that he refused to keep taking psychiatric medication. Morris was banned from the DESC shelter and, despite assistance from Long, was not able to care for himself or find safe housing.

Dr. Eisenhauer testified that "if [Morris] was discharged right now, I don't believe he would be adequately able to care for himself." Dr. Eisenhauer based her opinion on her evaluation of Morris, his hospital chart, and the documented concerns about his mental deterioration and weight loss.

Substantial evidence supports the conclusion that as a result of his deteriorating mental condition, Morris was in danger of serious physical harm because he was not capable of providing for his own essential needs, such as food and shelter.

We affirm.

WE CONCUR:

Schindler, J.

Cox, J.